United States Court of Appeals
Fifth Circuit

**F I L E D**

**June 12, 2003**

Charles R. Fulbruge III
Clerk

**UNITED STATES COURT OF APPEALS**

**FIFTH CIRCUIT**

_____

No. 02-60715
(Summary Calendar)

_____

BOBBY DALTON LAIRD,

Petitioner,

versus

DRUG ENFORCEMENT ADMINISTRATION,

Respondent.

Petition for Review of a Final Determination
of the United States Drug Enforcement Administration
Lower Docket No. 21 U.S.C. § 877

Before DAVIS, WIENER, and EMILIO M. GARZA, Circuit Judges.

PER CURIAM:[*]

Bobby Dalton Laird petitions this Court for review of a final determination of the Drug

Enforcement Administration ("DEA") denying his request that 21 C.F.R. § 1308.12 and 1308.13 be

amended to reclassify amphetamine and methamphetamine as Schedule III controlled substances

_____

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be
published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

under the Comprehensive Drug Abuse Prevention and Control Act of 1970 ("the Act"), 21 U.S.C. § 801 *et seq*. Laird contends that § 1308.12 must be set aide because it conflicts with 21 U.S.C. § 812(c). He also argues that Congress improperly delegated the authority to transfer controlled substances between schedules to the Attorney General or, in the alternative, that the Attorney General only has the authority under 21 U.S.C. § 811(a)(1) to transfer controlled substances added to the schedules after the enactment of § 812(c).[1]

The Act "permits any aggrieved person to challenge the scheduling of a substance by the Attorney General in a court of appeals." *Touby v. United States*, 500 U.S. 160, 163 (1991) (citing 21 U.S.C. § 877). Laird contends that he is "aggrieved" because, due to the transfer of amphetamine and methamphetamine from Schedule III to Schedule II, he was sentenced under 21 U.S.C. § 841(b)(1)(C) instead of 21 U.S.C. § 841(b)(1)(D) and was therefore eligible for, and received, a longer sentence.

21 U.S.C. § 812(a) provides that "[t]here are established five schedules of controlled substances, to be known as schedules I, II, III, IV, and V. Such schedules shall initially consist of the substances listed in this section." Section 812(c) established initial schedule designations for controlled substances that apply "unless and until amended [ ] pursuant to section 811 of this title . . . ." (Footnote omitted.) Under these initial schedules, amphetamine and methamphetamine were designated as Schedule III controlled substances. 21 U.S.C. § 812(c). Section 811(a)(1),

---

[1] In addition, Laird asserts that the transfer of amphetamine and methamphetamine from Schedule III to Schedule II was arbitrary and capricious. Because he does not present any argument in support of this assertion, we will not consider it. *See Al-Ra'id v. Ingle*, 69 F.3d 28, 31 (5th Cir. 1995) ("An appellant's brief must contain an argument on the issues that are raised, in order that we, as a reviewing court, may know what action . . . is being complained of. . . . There is no exemption for *pro se* litigants, though we construe their briefs liberally." (citation omitted)).

however, specifically empowers the Attorney General to transfer any drug between schedules if he "finds that such drug or other substance has a potential for abuse" and makes the findings prescribed by § 811(b). 21 U.S.C. § 811(a)(1). Pursuant to 21 U.S.C. § 871(a), the Attorney General delegated this authority first to the Bureau of Narcotics and Dangerous Drugs ("BNDD") and then to the BNDD's successor, the DEA. 28 C.F.R. § 0.100; 38 Fed. Reg. 18,380 (July 10, 1973). In 1971, the BNDD transferred amphetamine and methamphetamine from Schedule III to Schedule II. 36 Fed. Reg. 12,734 (July 7, 1971).

Laird first contends that, because the plain language of § 812(c) designates amphetamine and methamphetamine as Schedule III controlled substances, § 1308.12 is "not in accordance with law" and therefore must be set aside pursuant to 5 U.S.C. § 706(2)(A). This argument fails because Congress has given "the Attorney General the authority to add, remove, or reclassify substances among the schedules pursuant to the procedures and criteria of § 811(a)." *United States v. Kinder*, 946 F.2d 362, 368 (5th Cir. 1991).

Accordingly, Laird next asserts that § 811(a) violates the nondelegation doctrine. "So long as Congress lays down by legislative act an intelligible principle to which the person or body authorized to act is directed to conform, such legislative action is not a forbidden delegation of legislative power." *Touby*, 500 U.S. at 165 (internal brackets and quotation marks omitted). In *United States v. Gordon*, 580 F.2d 827, 840 (5th Cir. 1978), we rejected a nondelegation challenge to § 811(a), holding that, "[a]lthough there may be some ambiguity in the Act's standards, we believe these standards are sufficiently precise to apprise the delegatee of the circumstances under which a particular drug may be controlled." *See also United States v. Daniel*, 813 F.2d 661, 662-63 (5th Cir. 1987) ("The validity of the reclassification provisions has been affirmed consistently in this and other

circuits."). More recently, the Supreme Court concluded in *Touby* that 21 U.S.C. § 811(h), which "features fewer procedural requirements than the permanent scheduling statute [§ 811(a)]," placed sufficient restrictions on the Attorney General's discretion and therefore "satisf[ied] the constitutional requirements of the nondelegation doctrine." *Id*. at 165-67. Thus, this argument also fails.

Finally, Laird contends that § 811(a)(1) only authorizes the Attorney General to transfer controlled substances added to the schedules after the enactment of § 812(c) and thus only Congress could reclassify amphetamine and methamphetamine. This argument is without merit. *See United States v. Segler*, 37 F.3d 1131, 1133 (5th Cir. 1994) ("[W]e previously have held that the transfer of methamphetamine from Schedule III to Schedule II satisfied the requirements of § 811.").

For the foregoing reasons, the petition for review is DENIED.